UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF WISCONSIN

---

MICHAEL SCHULTZ, On Behalf of Himself
and All Others Similarly Situated,

                              Plaintiff,          Civil No. 08-314

        vs.                                 <u>CLASS ACTION</u>

TOMOTHERAPY INCORPORATED AND
FREDERICK A. ROBERTSON,

                              Defendants.

---

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

---

Plaintiff, individually and on behalf of all others similarly situated, by his attorneys, alleges the following based on the investigation of its counsel, except as to allegations specifically pertaining to plaintiff and his counsel, which are based on personal knowledge. The investigation of counsel is predicated on, among other things, a review of public filings by TomoTherapy Incorporated ("TOMO" or the "Company") with the United States Securities and Exchange Commission ("SEC"), press releases issued by the Company, media reports about the Company, and publicly available trading data relating to the price and volume of TOMO common stock.

## NATURE OF THE ACTION

1.      This is a securities fraud class action on behalf of all purchasers of the common stock of TOMO between February 13, 2008 and April 17, 2008 (the "Class Period") for violation of the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under §§10(b) and 20(a) of the 1934 Act, 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5, 17 C.F.R. §240.10b-5. Jurisdiction exists pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. §1331.

3.      Venue is proper in this District because defendants have their principal executive offices in this District, and many of the wrongful acts alleged herein took place or originated in this District.

4.      Defendants used the instrumentalities of interstate commerce, the U.S. mails and the facilities of the national securities markets in connection with the wrongful activity alleged herein.

## PARTIES

5.      Plaintiff Michael Schultz purchased TOMO common stock as set forth in the accompanying certification which is incorporated herein by reference, and was damaged thereby.

6.      Defendant TOMO develops, markets, and sells the Hi-Art system which is a radiation therapy system for the treatment of various types of cancer. The Hi-Art system costs about

$3 million and uses CT Scans to target its radiation to tumors, delivered in a complete 360 degrees around the patient.  The Company's principal offices are located at 1240 Deming Way, Madison, Wisconsin 53717.  The Company went public in May 2007 with the public offering of more than 10 million shares of its common stock.  TOMO stock trades on the NASDAQ under the symbol "TOMO."  Recently, effective January 1, 2008, the Company qualified to be listed on the NASDAQ Global Select Market, "an upgraded listing [a]s a result of meeting NASDAQ's highest initial listing standards based on financial and liquidity requirements."

7.      Defendant Frederick A. Robertson ("Robertson") was, at all relevant times, the Chief Executive Officer ("CEO") of TOMO.

<h2 align="center">CLASS ACTION ALLEGATIONS</h2>

8.      Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of a class (the "Class") consisting of all persons who purchased or otherwise acquired the common stock of TOMO between February 13, 2008 and April 17, 2008.  Excluded from the Class are defendants, the officers and directors of the Company, members of their immediate families and their legal representatives, heirs, successors, and assigns, and any entity in which defendants have or had a controlling interest.

9.      The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, there are over 10 million shares of TOMO common stock outstanding and more than eight million shares were traded during the Class Period, plaintiff believes that there are hundreds, if not thousands, of Class members.  Members of the Class may be identified from records maintained by TOMO or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

10.     Plaintiff's claims are typical of the claims of the other members of the Class in that all members of the Class have been damaged by the acts of defendants, which caused members of the Class to purchase TOMO common stock at artificially inflated prices.

11.     Plaintiff will fairly and adequately protect the interests of the other members of the Class. To assist him in that endeavor, plaintiff has retained counsel competent and experienced in class and securities litigation.  Plaintiff is not aware of any interest it holds which is antagonistic to the interests of the Class.

12.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     Whether the Exchange Act was violated by defendants' acts, as alleged herein;

(b)     Whether any materially false or misleading statements were made and/or defendants omitted material facts necessary to make statements made, in light of the circumstances under which they were made, not misleading; and

(c)     To what extent the members of the Class have sustained damages and the proper measure of damages.

13.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, because the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to pursue individual redress for the damages caused to them by defendants' acts.  Plaintiff is not aware of any difficulty that will be presented in managing this action as a class action.

## SUBSTANTIVE ALLEGATIONS

14.     Virtually all of TOMO's revenues and net income are derived from the sale of the Hi-Art system which the Company develops, markets and sells to for-profit and non-profit entities in the United States and worldwide, particularly in Europe.  The Hi-Art system can be purchased in multi-unit system orders or single-system orders.  TOMO records revenues on the sale of the Hi-Art system only after the unit is delivered, installed, operating and has been accepted by the customer. Defendants have disclosed to the market that acceptance by the customer typically occurs three to four weeks after delivery to the customer.  Defendants disclose to the market both TOMO's revenue backlog at the end of each quarter, which is the dollar value of orders received for the Hi-Art system and TOMO's new orders received in the quarter, in the form of total dollar value of the orders received in a quarter.  TOMO's gross profit margins are impacted significantly by the volume of revenues recorded by TOMO because service costs, which constitute a substantial portion of TOMO's costs, are reported above the gross margin line on TOMO's income statement.  Thus, because TOMO has a high level of fixed costs in its service infrastructure, a decrease in recorded revenues has a significant negative impact on TOMO's gross profit margins.

15.     As a result of defendants' disclosures to the market concerning TOMO's backlog, and recording of revenues on orders, and service costs, the market has come to understand that defendants are able to determine TOMO's revenues and net income for the upcoming quarter.

16.     On February 13, 2008, TOMO issued a press release styled "TomoTherapy Reports Fourth Quarter Financial Results – Record Revenue, New Orders and Backlog."  ("February Press Release.")  In the February Press Release, Defendants highlighted that, *inter alia*, TOMO's revenues for the fourth quarter 2007, ended December 31, 2007 ("Q4 '07"), were $78.7 million, an increase of 32% from the fourth quarter of 2006 ("Q4 '06").  Defendants also disclosed that TOMO recorded net income of $0.09 per diluted share in Q4 '07, down from $0.22 in Q4 '06.  In the February Press

- 4 -

Release, defendants touted the material facts that: (1) TOMO had $248 million in revenue backlog at the end of Q4 '07 which was a 51% increase from the revenue backlog at the end of Q4 '06; and (2) that TOMO had received new sales orders valued at $92 million in Q4 '07, a 25% increase from the value of new sales orders received in Q4 '06.

17.     In the February Press Release, defendants also provided to the market their 2008 "Outlook."  Defendant Robertson stated that "[o]ur robust business gives us confidence that we will add to the market share gain that we attained in 2007 . . . we expanded our . . . international sales footprint, and made key infrastructure investments for sustained growth. . . .  We expect another strong year in 2008, building on our recent initiatives and success."  Defendants further stated in the February Press Release that:

> [f]or fiscal 2008, management anticipates revenue of $290 million to $310 million and net income per share in the range of $0.34 to $0.39 per diluted share.

> Most of the company's revenue is recognized based on the customer's acceptance of the Hi-Art system.  Thus, quarter-to-quarter fluctuations in revenue should be expected.  Management continues to believe that its business is more accurately gauged by growth in backlog and revenue on an annual basis.

> Based on projected shipment dates for the Hi-Art system orders in backlog, the company currently anticipates 30% to 40% of its revenue will be generated in the first half of 2008.  Due to the strong order flow in the second half of 2007 and the projected timing of customers' construction projects, more of the units in backlog are scheduled to be delivered in the second half of 2008.

Defendant Robertson further stated in the February Press Release that:

> Based on the rapid global adoption of image-guided systems, we believe that Tomo Therapy's technology leadership position will allow us to continue to increase our market share in 2008 by growing new orders at a rate greater than the overall annual market growth rate.

18.     Defendants' statements in the February Press Release quoted in ¶¶16 and 17, above, were false and misleading when made because they failed to disclose the following material facts:

        (a)     A larger percentage of TOMO's revenue backlog at December 31, 2007 and TOMO's new orders received through February 12, 2008 were from for-profit entities which had

- 5 -

ordered multi-unit Hi-Art Systems and had scheduled deliveries of the multi-units sequentially throughout 2008 and 2009. Thus, defendants knew, based on the delivery dates they had in hand with respect to these multi-unit orders, that TOMO would not be able to record the full amount of the revenues associated with these backlogged multi-unit orders. Thus, defendants knew that having the order in hand did not mean, as they had stated to the market, that the revenue associated with that order would be recorded in full three to four weeks after delivery of the first of the multi units. Defendants further knew, based on the delivery dates that they had in hand, that delivery of the units in the backlogged multi-unit orders would be spread out over the entire 2008 year and into 2009 and that, consequently, the revenues on these multi-unit orders would be recognized throughout fiscal 2008 and into 2009;

(b)     Defendants had been targeting for-profit accounts prior to and during Q1 '08 and those accounts were placing orders for multiple higher treatment systems and installing the units sequentially. TOMO's sales of multi-unit Hi-Art systems was a recent event and had begun only shortly before the beginning of the class period. Thus, defendants had only a relatively brief order history with the Hi-Art system and multi-unit orders were relatively new to TOMO. As a result, defendants had no basis in fact or in their experience for determining how long a multi-unit system order would take to translate into recorded revenue. Thus, defendants had no basis in fact or in their experience for determining how long a multi-unit system order would exit backlog. Defendants were fully aware of this situation and were attempting to develop a process to accelerate the delivery time frame for multi-unit systems. This was particularly material because TOMO's backlog of multi-unit systems had grown to 30% of its total backlog from zero in 2007;

(c)     Defendants knew that average selling prices were lower in Q1 '08 by approximately 11% than they had been in Q1 '07 because Q1 '07 sales included a large number of

European sales denominated in euros and, with the known fall-off in European sales in Q1 '08, these Euro denominated sales were not occurring in Q1 '08;

(d)     As a result of the facts known to defendants, as alleged in subparagraphs (a), (b) and (c) above, defendants knew but did not disclose that TOMO's first quarter revenues would be negatively impacted and would not be in line with the historical growth defendants led the market to believe TOMO would record in Q1 '08 based on the record backlog on hand at the end of Q4 '07.  In fact, defendants' own internal Q1 revenue target was significantly below the $57 million consensus revenue estimate developed by the market;

(e)     Defendants knew that the undisclosed material facts alleged in subparagraphs (a), (b) and (c) above were in marked contrast to the composition and delivery time periods of TOMO's historical backlog where there was not a significant percentage of orders of multi-unit systems from for-profit entities who had spread delivery of the units sequentially over a period of time in excess of one year.  Consequently, defendants knew that their statements alleged in ¶¶16 and 17 above concerning the relationship between backlog, new orders and delivery and acceptance time frames and their impact on TOMO's revenues were false and misleading with respect to fiscal 2008;

(f)     Defendants knew that new sales orders from Europe had slowed in Q1 '08 through February 12, 2008, and that TOMO was experiencing a serious delay in closing European orders.  Defendants knew that international sales, which had been 50% of total sales in Q1 '07, were trending down to approximately 25% of total sales in Q1 '08.  Thus, defendants knew that TOMO's revenues and net income would be negatively impacted in Q1 '08;

(g)     Defendants knew that TOMO's gross margins in Q1 '08 were and would continue to be approximately 20% lower than they had been in Q1 '07 primarily because as revenues declined, gross margins declined substantially because TOMO recorded its service costs, which were substantial regardless of revenues, above the gross margin line on TOMO's income statement; and

(h)     As a result of the facts known to defendants, as alleged in subparagraphs (a) – (g), above, defendants knew but did not disclose that TOMO's revenues in Q1 '08 would be substantially lower and would not show increased growth from either Q1 '07 or Q4 '07 and that TOMO would suffer a loss in Q1 '08.

19.     Shortly after the February Release, John Neis ("Neis") sold approximately 917,621 shares of TOMO common stock from the time period of February 26, 2008 through March 14, 2008. Neis has been a director since 1999 and is a member of the Audit, Compensation and Nominating and Governance Committees of the Board.  Neis' stock ownership included shares held by Venture Investors LLC, based in Madison, Wisconsin.   Venture Investors LLC provided Venture capital financing to TOMO during the course of its pre-public offering existence.

20.     On April 17, 2008, defendants issued a press release styled TomoTherapy Reports Estimated 2008 First-Quarter Results and Revises Fiscal 2008 Outlook ("April Press Release").  The April Press Release disclosed that Q1 '08 revenues would fall to $39 million, a 24% decline from Q1 '07.  Defendants further disclosed that TOMO would suffer a net loss of $0.12 per diluted share compared to a net income of $0.12 in Q1 '07.  Finally, defendants disclosed that they had revised downward their 2008 "Outlook," decreasing 2008 revenues to the range of $255 million to $290 million and decreasing net income to the range of $0.14 to $0.33 per diluted share.  In the April Press Release, defendants belatedly disclosed the material facts that a greater percentage of TOMO's backlogged orders were for multi-unit Hi-Art Systems ordered by for profit entities who had scheduled delivery of the units sequentially, these units would remain in backlog longer than single-unit orders and delivery would be pushed further back in 2008 and even into 2009.  Defendants also disclosed that it had received fewer new sales orders in Europe and that it had to hire a new Managing Director for European and Middle East operations in April 2008.

21.     The market reacted negatively to defendants' belated disclosures and the market price of TOMO common stock dropped 32% to close at $9.10 per share on April 17, 2008, on extraordinary trading volume in excess of eight million shares.

22.     The market for TOMO common stock was open, well-developed and efficient at all relevant times.   As a result of these materially false and misleading statements and failures to disclose, TOMO's securities traded at artificially inflated prices during the Class Period.   Plaintiff and other members of the Class purchased or otherwise acquired TOMO's common stock relying upon the integrity of the market price of TOMO's common stock and market information relating to TOMO, and have been damaged thereby.

23.     During the Class Period, defendants materially misled the investing public, thereby inflating the price of TOMO's common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading.   Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

24.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiff and other members of the Class.   As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about TOMO's business, prospects and operations.   These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of TOMO and its business, prospects and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times.   Defendants' materially false and misleading statements during the Class Period resulted in plaintiff and other members of the Class purchasing

- 9 -

the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

## Additional Scienter Allegations

25.      As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.   As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding TOMO, their control over, and/or receipt and/or modification of TOMO's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning TOMO, participated in the fraudulent scheme alleged herein.

## Loss Causation/Economic Loss

26.      During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct which artificially inflated the prices of TOMO common stock and operated as  a fraud or deceit on Class Period purchasers of TOMO common stock by failing to disclose the material adverse facts detailed herein.    When Defendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the price of TOMO common stock fell precipitously as the prior artificial inflation came out.  As a result of their purchases of TOMO common stock during the Class Period, Plaintiff and the other Class members suffered economic loss, *i.e.*, damages, under the federal securities laws.

27.      By failing to disclose the material facts detailed herein, Defendants presented a misleading picture of TOMO's business and prospects.  Defendants' false and misleading statements

had the intended effect and caused TOMO common stock to trade at artificially inflated levels throughout the Class Period.

28.     As a direct result of the disclosures on April 17, 2008, the price of TOMO common stock fell precipitously, falling from $13.35 per share to $9.10 per share.  This disclosure removed the inflation from the price of TOMO common stock, causing real economic loss to investors who had purchased TOMO common stock during the Class Period.

29.     The precipitous decline in the price of TOMO common stock after this disclosure was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market.  The timing and magnitude of the price decline in TOMO common stock negates any inference that the loss suffered by Plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the Defendants' fraudulent conduct.   The economic loss, *i.e.*, damages, suffered by Plaintiff and the other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the prices of TOMO common stock and the subsequent significant decline in the value of TOMO common stock when Defendants' prior misrepresentations and other fraudulent conduct were revealed.

**Applicability of Presumption of Reliance:**
**Fraud on the Market Doctrine**

30.     At all relevant times, the market for TOMO common stock was an efficient market for the following reasons, among others:

(a)     TOMO common stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     as a regulated issuer, TOMO filed periodic public reports with the SEC and the NASD;

(c)     TOMO regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     TOMO was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

31.     As a result of the foregoing, the market for TOMO common stock promptly digested current information regarding TOMO from all publicly available sources and reflected such information in the prices of the stock.  Under these circumstances, all purchasers of TOMO common stock during the Class Period suffered similar injury through their purchase of TOMO common stock at artificially inflated prices and a presumption of reliance applies.

**No Safe Harbor**

32.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.  Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements were made, the particular speaker knew that the particular forward-looking statement was

false, and/or the forward-looking statement was authorized and/or approved by an executive officer of TOMO who knew that those statements were false when made.

## COUNT I

### For Violation of §10(b) of the Exchange Act and Rule 10b-5
### Against All Defendants

33.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

34.     During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

35.     Defendants violated §10(b) of the Exchange Act and Rule 10b-5 in that they:

(a)     Employed devices, schemes, and artifices to defraud;

(b)     Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)     Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of TOMO common stock during the Class Period.

36.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for TOMO common stock.  Plaintiff and the Class would not have purchased TOMO common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

37.     As a direct and proximate result of these defendants' wrongful conduct, plaintiff and the other members of the  Class suffered damages in connection with their purchases of TOMO common stock during the Class Period.

## COUNT II

### For Violation of §20(a) of the Exchange Act
### Against Defendant Robertson

38.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

39.     Defendant Robertson acted as a controlling person of TOMO within the meaning of §20(a) of the Exchange Act.  By reason of his position as CEO of TOMO, he had the power and authority to cause TOMO to engage in the wrongful conduct complained of herein.  By reason of such conduct, Robertson is liable pursuant to §20(a) of the Exchange Act.

### JURY TRIAL DEMANDED

Plaintiff demands a trial by jury.

WHEREFORE, plaintiff prays for relief and judgment, as follows:

A.     Determining that this action is a proper class action, certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure, and certifying plaintiff's counsel as class counsel;

B.     Awarding compensatory damages in favor of plaintiff and the other members of the Class against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, including prejudgment and post-judgment interest thereon;

C.     Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.     Such other and further relief as the Court may deem just and proper.

DATED:  May 30, 2008                    **ADEMI & O'REILLY, LLP**


                                        s/Shpetim Ademi
                                        _____

                                        GURI ADEMI (SBN 1021729)
                                        SHPETIM ADEMI (SBN 1026973)
                                        3620 East Layton Avenue
                                        Cudahy, WI  53110
                                        Telephone:  414/482-8000
                                        414/482-8001 (fax)
                                        Email: gademi@ademilaw.com
                                        Email: sademi@ademilaw.com


                                        **COUGHLIN STOIA GELLER
                                          RUDMAN & ROBBINS LLP**
                                        SAMUEL H. RUDMAN
                                        DAVID A. ROSENFELD
                                        58 South Service Road, Suite 200
                                        Melville, NY  11747
                                        Telephone:  631/367-7100
                                        631/367-1173 (fax)

                                        **LAW OFFICES BERNARD M. GROSS, P.C.**
                                        DEBORAH R. GROSS
                                        ROBERT P. FRUTKIN
                                        100 Penn Square East, Suite 450
                                        Philadelphia, PA 19107
                                        Telephone:  215/561-3600
                                        215/561-3000 (fax)

                                        **LAW OFFICES OF KENNETH ELAN**
                                        KENNETH ELAN
                                        217 Broadway, Suite 606
                                        New York, NY 10007
                                        Telephone:  212/619-0261
                                        212/385-2707 (fax)

                                        *Attorneys for Plaintiff*

## CERTIFICATION OF PLAINITFF

1.     I, Michael Schultz, have reviewed the complaint and have authorized the filing of same.

2.     I did not purchase the securities that are the subject of the Complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.     I am willing to serve as a class representative and provide testimony at deposition and trial, if necessary.

4.     My transaction(s) in TOMOTHERAPY INCORPORATED during the time period from February 13, 2008 through April 17, 2008, inclusive are set forth below:

| Date | Purchases/Sales | Amount | Price |
|------|-----------------|--------|-------|
| 2/28/08 | Purchase | 1,000 @ 13.76 | $13,760.00 |
| 2/28/08 | Purchase | 1,000 @ 13.86 | $13,860.00 |

5.     During the previous three years, I have not been a lead plaintiff in any securities fraud class actions.

6.     I will not accept any payment for serving as a class representative beyond my pro rata share of any recovery, except as ordered by the Court with respect to an award for reasonable costs and expenses (including lost wages).

I declare under penalty of perjury that the foregoing is true and correct.

Executed this        day of May 2008 at                                    (city/state).

_Michael N Schultz_  5/19/08
**MICHAEL SCHULTZ**